# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **LEO C. STEVENS,** | :: | **MOTION TO VACATE** |
| Movant, | :: | **28 U.S.C. § 2255** |
| | :: | |
| v. | :: | **CRIMINAL ACTION NO.** |
| | :: | **1:11-CR-40-ODE-AJB** |
| **UNITED STATES OF AMERICA,** | :: | |
| Respondent. | :: | **CIVIL ACTION NO.** |
| | :: | **1:13-CV-2271-ODE-AJB** |

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Movant is confined at the federal prison in Oakdale, Louisiana. Movant, pro se, filed a motion under 28 U.S.C. § 2255 challenging his convictions and sentence in this case. [Doc. 68.][1] Movant also filed a motion for plain error review, which contains further discussion of the claims in his § 2255 motion. [Doc. 67.] Respondent filed briefs opposing both motions, [Docs. 73 & 74], and Movant filed a reply, [Doc. 75]. For the reasons discussed below, the undersigned recommends that the Court deny the motions and deny a certificate of appealability.

**I.   Background**

The indictment in this case charged Movant with two counts of access device

---

[1]   All citations to the record are to case number 1:11-cr-40-ODE-AJB.

AO 72A
(Rev.8/82)

fraud in violation of 18 U.S.C. §§ 1029(a)(2) and 1029(a)(3), five counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), and two counts of violating the Hazardous Materials Transportation Act codified at 49 U.S.C. § 5124. [Doc. 1.] The indictment charged Movant with committing those crimes between July 2010 through January 2011. [*Id.*]

Respondent's evidence against Movant was that he "engaged in a scheme where he would drive a white Ford F-250 truck to various gas stations and steal diesel fuel by using the credit card information that belonged to other people." [Doc. 46 ("Plea Tr.") at 14.] Movant "had stole their identities and credit card information, and then used those credit card numbers to then steal diesel fuel at gas stations." [*Id.*] Federal agents "saw [Movant] steal diesel fuel and followed him to his house. They then traced the credit card numbers that were used in the purchases, and the . . . card numbers used were stolen . . . ." [*Id.* at 14-15.] The owners of those credit cards were prepared to testify "that they did not authorize the purchases, and, in fact, did not know [Movant]." [*Id.* at 15.] The truck Movant used to store and transport the diesel fuel "held over 200 gallons" of fuel and "did not have any placarding . . . showing that he was hauling diesel fuel." [*Id.*] Movant also did not have a commercial driver's license or a hazardous materials endorsement on his driver's license. [*Id.* at 17-18.] After

2

obtaining the diesel fuel from gas stations, Movant would "then offload the fuel at various trucking businesses" to whom he "sold the diesel [fuel] for a discount." [*Id.* at 15-16.]

In June 2011, Movant pled guilty, without a plea agreement, to all nine counts in the indictment. [Doc. 23; Plea Tr.] Movant agreed to all the facts described above. [Plea Tr. at 18.] He also agreed that many of the fuel pumps at which he used a stolen credit card required him to enter the zip code associated with the owner of the card, which was "evidence that he knew these were real people that he was stealing the identities of[,] which is one of the factors of the [five] aggravated identity theft[]" counts in the indictment. [*Id.* at 16-17.] The five persons identified in those counts were prepared to testify that their credit card information "had been compromised, . . . they hadn't authorized the purchases, and . . . [they] all live in Oklahoma and had not been to Georgia [and] didn't know [Movant]." [*Id.*] After agreeing to all those facts, Movant had the following discussion with the Court:

> THE COURT: With respect to the use of other people's credit cards, did you know what you were doing was wrong?
>
> [MOVANT]: Yes.
>
> THE COURT: And did you know that you were defrauding the people whose credit cards you were using?

3

[MOVANT]: Yes, I did.

[*Id.* at 18-19.]

The Court sentenced Movant in November 2011. [Doc. 37.] Probation officials prepared a Presentence Investigation Report ("PIR") before the sentencing hearing, and Movant filed objections to the PIR. [*See* Doc. 40.] At the hearing, Respondent conceded to Movant's objection to the loss amount, resulting in a two-level decrease under the U.S. Sentencing Guidelines (the "Guidelines"). [Doc. 47 ("Sent. Tr.") at 2-3.] Movant withdrew his objection to the number of victims, conceding that there were more than fifty, but less than 200, victims and that the victims included the people whose credit card information was stolen. [*Id.* at 2, 11.] The sentencing range under the Guidelines was forty-six to fifty-seven months of imprisonment for all counts other than the aggravated identity theft counts and twenty-four to 120 months of imprisonment for the aggravated identity theft counts. [*Id.* at 6, 13-15.] Because the law requires the sentence for the aggravated identity theft counts to run consecutively to the sentence for the other counts, the total range under the Guidelines was seventy to 177 months of imprisonment. [*See id.*]; 18 U.S.C. § 1028A(a)-(b).

The Court sentenced Movant to forty-eight months of imprisonment for the aggravated identity theft crimes and fifty-seven months of imprisonment for the other

crimes, resulting in a total of 105 months of imprisonment. [Doc. 37.] The Court imposed three years of supervised release and ordered Movant to pay $69,936.32 in restitution. [*Id.*]

Attorney Nicole M. Kaplan represented Movant from the plea stage through direct appeal. While his appeal was pending, Movant, through attorney Daniel Kane, filed a motion to vacate his plea and illegal sentence. [Doc. 45.] Movant argued in that motion that his conviction for the five counts of aggravated identity theft, and the associated forty-eight month prison sentence, should be vacated because there was no factual basis in the record to conclude that Movant knew that the credit card information he used to obtain the diesel fuel belonged to real people. [*Id.*] Movant relied on *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), in which the Supreme Court "conclude[d] that § 1028A(a)(1) [the aggravated identity theft statute] requires the Government to show that the defendant knew that the means of identification at issue belonged to another person." [*Id.*]; *Flores-Figueroa*, 556 U.S. at 657.

The undersigned recommended that Movant's motion to vacate his convictions and sentence for aggravated identity theft be dismissed for lack of jurisdiction because of the pending appeal. [Doc. 61.] The undersigned noted that Movant's motion "would not be granted even if it were properly before this Court" because a factual basis for all

5

elements of the aggravated identity theft crimes was established at Movant's plea hearing. [*Id.* at 5-6 n.1.] Thus, "Movant's claim that he unknowingly pleaded guilty to crimes he did not commit because he did not know that he was using the credit cards of real people is without merit." [*Id.*] The Court adopted the report and recommendation and dismissed the motion without prejudice. [Doc. 63.]

On appeal, Movant claimed that his 105-month prison sentence was substantively unreasonable, in part because the Court unnecessarily stacked the two twenty-four month sentences for the aggravated identity theft crimes. *United States v. Stevens*, 502 Fed. Appx. 878, 879 (11th Cir. Dec. 21, 2012). The appellate court rejected Movant's arguments, finding that "[t]he record clearly shows that a high end guideline sentence was appropriate . . . [given] the seriousness of the offenses, which resulted in significant financial loss and impacted many victims . . . [and Movant's] extensive history of fraudulent conduct." *Id.* at 880.

Movant asserts the following grounds for relief in his § 2255 motion:

1. Pursuant to *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the Court's application under the Guidelines of eight-point enhancements for the aggravated identity theft crimes and two-point enhancements for all crimes violated the Sixth Amendment to the U.S. Constitution because the facts underlying those enhancements were not established in the indictment or found by a jury;

6

    2.      Movant is actually innocent of the aggravated identity theft crimes because Respondent presented no evidence that Movant knew the credit card information he used belonged to real people, as required by *Flores-Figueroa*;

    3.      The Court erred by applying the Guidelines enhancement for fifty or more victims because there was no PIR and Respondent presented no evidence of the number of victims, as required by *United States v. Washington*, 714 F.3d 1358 (11th Cir. 2013); and

    4.      Kaplan rendered ineffective assistance by not raising grounds two and three, above.[2]

[Doc. 67 at 2-5; Doc. 68 at 4-8.]  Respondent contends that Movant procedurally defaulted grounds one through three by not raising them on direct appeal and that all of the grounds lack merit.  [Doc. 73.]

---

[2] Movant listed grounds three through four in his § 2255 motion, [Doc. 68], and discussed them in detail in his "motion for plain error review," [Doc. 67].  Movant filed the latter motion under Federal Rules of Criminal Procedure 11(e) and 52(b). [Doc. 67 at 1.]  Rule 11(e) provides: "After the court imposes sentence, the defendant may not withdraw a plea of guilty . . . and the plea may be set aside only on direct appeal or collateral attack."  Rule 52(b) provides: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  Movant cannot proceed under either Rule, as § 2255 is the only avenue for his collateral attack of the judgment of conviction.  *See* 28 U.S.C. § 2255(a); *United States v. Frady*, 456 U.S. 152, 164 (1982) (Rule 52(b)'s plain error standard "was intended for use on direct appeal" and "is out of place when a prisoner launches a collateral attack against a criminal conviction").  The Court thus considers Movant's arguments in his motion for plain error review as part of his request for relief under § 2255.

7

## II.     The 28 U.S.C. § 2255 Standard

To obtain relief under § 2255, a movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice.  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal."  *Frady*, 456 U.S. at 166.

"Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a [] § 2255 challenge" unless the movant shows "both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error."  *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004).  "[T]o show cause for procedural default, [a § 2255 movant] must show that some objective factor external to the defense prevented [him] . . . from raising his claims on direct appeal and that this factor cannot be fairly [attributed] to [his] own conduct."  *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004).  "Actual prejudice"

8

requires a movant to show that the alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Reece v. United States*, 119 F.3d 1462, 1467 (11th Cir. 1997).

A court also may review a claim in a § 2255 motion that was not raised on direct appeal if "a constitutional violation has probably resulted in the conviction of one who is actually innocent" and thus would result in a fundamental miscarriage of justice absent review. *Lynn*, 365 F.3d at 1234-35 (quotation marks omitted). "Actual innocence means factual innocence, not mere legal innocence." *Id.* at 1235 n.18 (quotation marks omitted). The movant must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" not presented before conviction. *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). The new evidence must be "reliable," and such evidence is "unavailable in the vast majority of cases," making it "extremely rare" for a person to establish that he is actually innocent of the crime for which he was convicted. *Id.* at 321, 324. Such cases are "truly 'extraordinary.'" *Id.* at 327.

### III. Analysis

An evidentiary hearing is not warranted on a § 2255 movant's claims if "the motion and the files and records of the case conclusively show that the prisoner is

entitled to no relief." 28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973). That is the case here, as explained below.

### A. Ground One

Movant contends that *Alleyne* prevented the Court from finding the facts triggering the Guidelines enhancements at sentencing. The Supreme Court held in *Alleyne* that any fact that increases the mandatory minimum sentence for a crime must be proved to a jury beyond a reasonable doubt. *Alleyne*, 133 S. Ct. at 2155, 2163.

Movant procedurally defaulted his claim that the Court erred by finding facts triggering Guidelines enhancements by not raising the claim on direct appeal. Movant does not argue cause and prejudice for the default. [*See* Doc. 68 at 8 (expressly disclaiming ineffective assistance of counsel as cause for not raising the *Alleyne* claim).] Movant's argument that he is actually innocent of the sentence enhancements does not excuse the default because he must show, with new evidence not available when he was sentenced, that he is innocent – as a factual matter – of the substantive crimes, not that he is innocent – as a legal matter – of sentence enhancements under the Guidelines. *See Schlup*, 513 U.S. at 321, 324; *Gilbert v. United States*, 640 F.3d 1293, 1320 (11th Cir. 2011) (en banc) ("A defendant who is convicted and then has . . . any [] guidelines enhancement[] applied in the calculation of his sentence has not been

10

convicted of being guilty of the enhancement."). Movant has made no such showing.

Even if Movant had not defaulted ground one, the claim fails because *Alleyne* does not apply retroactively to cases on collateral review. *See Chester v. Warden*, No. 12-15119, 2014 WL 104150, at *4 (11th Cir. Jan. 13, 2014) ("*Alleyne*'s rule does not apply retroactively on collateral review."). Because *Alleyne* does not apply retroactively and Movant's judgment of conviction became final before *Alleyne* was decided, *Alleyne* provides no support for Movant's claim. *See id.*; *see also Owens v. United States*, No. 1:09-CR-286-RWS-JFK-1, 2013 WL 6800193, at *6 (N.D. Ga. Dec. 20, 2013) (rejecting claim that *Alleyne* applies retroactively in § 2255 cases). Movant is not entitled to relief on ground one of his § 2255 motion.

    B.    <u>Ground Two</u>

Ground two is procedurally defaulted because Movant did not raise it on direct appeal. Movant has not shown cause and prejudice for the default or that he is actually innocent of the crimes to which he pled guilty.

Ground two also fails on its merits. Movant's claim here is the same one he made in the motion to vacate the aggravated identity theft convictions that he filed while his appeal was pending. Movant claims there was no factual basis to find that he knew the credit card information he used belonged to real people. In ruling on

11

Movant's premature motion, the Court found that the claim lacked merit because Movant's admission to the detailed facts described at the plea hearing provided a sufficient basis to find that he knew he was using real people's credit card information. [Doc. 61 at 5-6 n.1; Doc. 63.]

As discussed in Part I, above, Respondent's counsel described in detail at the plea hearing the facts of Movant's crimes. The prosecutor emphasized numerous times that the credit card information Movant used was obtained from real people without their permission and that those people would testify to those facts. Movant agreed to all those facts, including that he accessed credit card accounts with information the credit card issuers use to identify the person to whom the card was issued – the zip code of the persons' billing address. [Plea Tr. at 14-18]; *see Flores-Figueroa*, 556 U.S. at 656 ("[W]here a defendant has used another person's identification information to get access to that person's bank account, the Government can prove knowledge with little difficulty.").

Movant agreed that the prosecutor correctly stated the facts, admitted wrongdoing "with respect to the use of other people's credit cards," and admitted that he knew he was "defrauding the people whose credit cards" he used. [*Id.* at 18-19.] Movant's admissions provided a solid basis to find that he knew the credit card

12

information he used belonged to real people. Movant is not entitled to relief on ground two of his § 2255 motion.

    C.    <u>Ground Three</u>

Movant contends here that the Court did not get a PIR for sentencing and erred by applying the Guidelines enhancement for at least fifty victims because Respondent presented no evidence to support that finding. The record refutes Movant's claim that the Court had no PIR. It is clear from the record that the Court and the parties received the PIR before the sentencing hearing, Movant filed objections to the PIR before sentencing, and the Court and the parties discussed the PIR in depth at the hearing. [Doc. 40; Sent Tr.]

Movant procedurally defaulted his claim that there was no factual basis for the enhancement pertaining to the number of victims. Movant blames the default on Kaplan, contending that she was ineffective for withdrawing the objection to the victim enhancement and not pursuing the claim. Because Movant's contention can be construed as the purported cause for the default and he asserts Kaplan's ineffectiveness in ground four of his § 2255 motion, the Court discusses the issue below.

13

D.   Ground Four

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was so deficient that it was below objectively reasonable standards and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took. *Chandler*, 218 F.3d at 1315.

Under the second prong of the test, the movant must show that counsel's challenged acts or omissions prejudiced him, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

14

Ineffective assistance of counsel may constitute cause for a procedural default, but "[n]ot just any deficiency in counsel's performance will do . . . . [T]he assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." *Id.*; *see Lynn*, 365 F.3d at 1235.

Movant has presented nothing to show that no competent lawyer would have decided, as Kaplan did, to withdraw an objection to the PIR's finding that there were at least fifty victims of Movant's crime. It was reasonable for Kaplan not to argue, as Movant does, that only the banks who issued the credit cards, and not the individual people to whom the cards were issued, could be victims. The Guidelines define "victim" in cases involving fraudulent use of credit cards to include "any individual whose means of identification was used unlawfully or without authority." Guidelines § 2B1.1, app. n. 4(E). Indeed, "[a] victim is any person – including individuals, corporations, and companies – who sustained any part of the actual loss." *United States v. Morris*, 153 Fed. Appx. 556, 559 (11th Cir. Oct. 3, 2005) (quotation marks omitted) (holding, in case involving stolen credit cards used to purchase merchandise for resale, that this Court did not err in counting individuals for victim

enhancement despite the PIR listing a credit card issuer as the only victim).

Nor has Movant shown that no competent lawyer would have failed to object to there being at least fifty victims of Movant's crimes. Movant identifies no basis for Kaplan to have argued that there were less than fifty victims or that the PIR's contrary finding was wrong.[3] [*See* Docs. 67, 68, 75.]

Even if Movant had shown that Kaplan was constitutionally deficient by not objecting to the victim enhancement, he has not shown that he was prejudiced by her failure to object or to raise the issue on appeal. The victim enhancement increased the Guidelines range slightly, but the Court was not bound to sentence Movant within the Guidelines range because the Guidelines are advisory. The Court sentenced Movant at the very top of the Guidelines range for the non-identity theft crimes and sentenced

---

[3] And because Kaplan withdrew the objection to the number of victims, the Court did not err by accepting the PIR's findings without receiving evidence from Respondent on the issue. Movant's reliance on *United States v. Washington* is misplaced because the error in that case was the court's failure to require the government to produce evidence supporting the victim enhancement where the defendant objected to it and contested it throughout sentencing. *See United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013) ("When the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing 'sufficient and reliable' evidence to prove the necessary facts by a preponderance of the evidence."); *United States v. Shelton*, 400 F.3d 1325, 1329-30 (11th Cir. 2005) (holding that if defendant does not object to a fact in the PIR, the fact is deemed admitted and may be used, without further evidence, to enhance the sentence).

16

him to twice the minimum term of imprisonment for the identity theft crimes. The Court did so because of Movant's extensive criminal record, including several convictions for fraud crimes; the seriousness of "the instant criminal conduct" in this case; and the need to deter Movant from continuing to engage in the same type of criminal activity. [Sent Tr. at 17-18.] In fact, the Court found it "easy to persuade me based on your record . . . [of] a real history here of fraud type conduct going way back" that a long prison sentence is necessary "to teach you better than prior sentences have that you cannot continue this life of fraud." [*Id.*] Movant has not shown a reasonable probability that his sentence would have been lower if the enhancement for at least fifty victims had not been applied.

Movant also has not shown a reasonable probability that he would prevailed on appeal if Kaplan had raised the victim enhancement issue there. Movant would have had to show on appeal that it was plain error to apply the enhancement because he did not object to it in this Court. *See United States v. Phillips*, 287 F.3d 1053, 1054-55 (11th Cir. 2002). That is a demanding standard that requires the defendant to show plain error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceeding. *Id.*

The appellate court agreed with this Court that Movant's crimes were serious and

17

"resulted in significant financial loss and impacted many victims." *Stevens*, 502 Fed. Appx. at 880. The appellate court also agreed that the sentence needed to be lengthy to deter Movant "because, as the district court noted, previous shorter prison sentences for similar fraudulent conduct had clearly not deterred [him] from his fraudulent conduct." *Id.* And the Court's decision to impose twice the minimum sentence for the aggravated identity theft crimes "was clearly reasonable" given the seriousness of those crimes and Movant's "extensive history of fraudulent conduct." *Id.* Movant has not shown that despite that view of the record in this case the appellate court would have found plain error in the Court's application of the enhancement for at least fifty victims had Kaplan raised the issue on appeal.

In short, Movant has not shown that Kaplan rendered ineffective assistance with regard to ground three of his § 2255 motion. Movant thus has not shown cause and prejudice for defaulting ground three and is not entitled to relief on his independent claim of ineffective assistance.

Because ground two lacks merit, as explained in Part III.B, above, Movant's claim that Kaplan was ineffective for not raising that claim also fails. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) ("[C]ounsel is not ineffective for failing to raise claims reasonably considered to be without merit." (quotation marks omitted)).

18

Movant is not entitled to relief on ground four of his § 2255 motion.

## IV. Certificate of Appealability ("COA")

A § 2255 movant may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v . McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

A COA is not warranted in this case. The resolution of the grounds for relief in Movant's § 2255 motion is not reasonably debatable given the controlling law and the record of Movant's plea and sentencing hearings. Movant has not made a substantial showing of the denial of a constitutional right.

19

## V. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to vacate sentence under § 2255, [Doc. 68], and motion for plain error review, [Doc. 67], be **DENIED**. **IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED** and that civil action number 1:13-cv-2271-ODE-AJB be **DISMISSED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned.

**IT IS SO RECOMMENDED and DIRECTED**, this 24th day of January, 2014.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)